Good morning. My name is Chad Wright. I'm representing Todd Horob today. I'd like to reserve two minutes for rebuttal. Thank you. My focus this morning is going to be on the increased sentence for the consecutive sentence for identity theft. As a matter of law, after that sentence was dismissed by this Court on appeal, although we're talking a lot today and the briefs talked about sentencing packages and bundling and unbundling of these packages, I think the real focus is that we're not dealing with the cable company here. We've got to go back to the idea of, is there a reasonable likelihood of vindictiveness that happened in this case? I think the record shows that there is that reasonable likelihood, and that reasonable likelihood is what — But to say that, you have to disbelieve what the district judge said. The district judge said that he'd given a downward departure in the earlier sentence based on what he thought was a wrongful, excessive overall sentence, being driven upward by the mandatory minimum on the count that was later dismissed. So when it comes back to him, he says, Well, I no longer feel that I need to reduce the others in order to get to a just sentence. I'll stick with what I think was a just sentence. Now, that's what he said.  That's what he said in the second sentencing, Your Honor. But if you look what happened in the first sentencing, and I apologize, I have to look to the government's supplemental excerpts of record, is that he always excluded that sentence, the consecutive sentence for identity theft, from his calculation. Well, the judges — I've sentenced a lot of people, and people that have been sentencing judges. You know, it isn't uncommon to sort of sentence people holistically. You get to where, you know, you have a sense of their overall conduct. And it isn't so much about what was, you know, what are mandatory sentencing enhancements or whatever. You have a sense of that overall conduct, and you get to where you think is just. And as Judge Fletcher indicated, that, you know, first off, you have to — he didn't get a higher sentence. So that then — that means you don't have the presumption of vindictiveness. And it seems pretty clear that he had a sort of a — despite the fact that I know that your client feels otherwise, he had sort of an overall sense of his conduct and wanted, you know — and that's just what he did. Well, I — you've got several points in there that I'd like to — Sorry, yeah, compound several points. That I'd like to address. First of all is, I think we do have an increase in the sentence, right? I mean, the judge clearly set that aside. And if you look at Baye — Did he get more time? He got the same amount of time, but not considering the consecutive sentence. And that's what makes this case unique, is that Congress, as Baye says, Congress gets to decide what's in that overall package, right? And they have specifically said that identity theft is not in that overall package. They have removed it from the package. That's unlike Baye or any other cases you have. And I think if you look at Baye, I like Justice Canby's formula in Baye where he says, look at the overall sentence here. What was the max available? Well, the max available, if you group them together, was about 30 years — 32 years originally. And that reduced to about 30 years for the resentencing. And so his sentence increased, when you look at the max, by 3 percent. I think that's a good, common-sense way to look at it, whether there was actually an increase or not. So you want us to sort of change the calculus on that you get the presumption if you just — if you strike that part, then the overall sentence would have to be more without that 24 months. I don't want you to change the calculus. I think Hagler and Baye control in those type of cases. But as Baye says, the identity theft is removed from that package. And so it was clear from the written judgment. It was clear from the time in sentencing. If you look at the supplemental excerpts of records, the judge said, wait a minute, this sentencing guideline is too high considering the enhancements. He was clear. So is he entitled to the presumption of vindictiveness here or not? I think he is entitled to the presumption of vindictiveness. So anything — so the 24 months, so you're saying take that out and anything over that, then take the sentence back to that, anything over that entitles you to that presumption of vindictiveness. I think — Even though the actual months that he initially got are not different in the end, right? Well, I want to be clear. The presumption of vindictiveness does not kick in unless there's a reasonable likelihood of vindictiveness. It's not just the change in sentence, because that doesn't — that doesn't kick in the presumption of vindictiveness. Please suppose he gets the presumption. Why hasn't it been rebutted? The judge gave his reasons for why he gave the sentence, and it's even below the guidelines, as I understand it. Well, and that's a good point. The judge did not rely on his post-sentencing conduct, right? Because there was an opportunity. The judge mentioned the U.S. Supreme Court case of Peppers and said, hey, can I rely on the post-sentencing conduct here? Because I'm not happy with the post-sentencing conduct. And defense counsel said, well, Judge, that may be pushing the limit of Peppers. And the judge said, okay, I'm not going to do that. I'm not going to hold that post-sentencing conduct against you. You have a right to challenge the transcript, and I know you're going through the process to do it. I'm not happy with it, but I'm going to rely on the same things that I relied on originally. So there's no new information than what he relied on at the original sentence. Well, in part your argument is dependent upon your unhappiness, but it's an odd sort of unhappiness, of him subverting the intention of Congress with the mandatory minimum sentence the first time around, because that's what he did. He said, I don't like the mandatory minimum. If the mandatory minimum weren't in here, I wouldn't give you this downward departure on the other things. I agree that's what he said at the second sentencing, Judge. But I urge you to look at the first sentencing. If you look at the supplemental excerpts of record 65, he said, I think the guideline range using the base sentence sets forth a more reasonable guideline range and consider all of the other enhancements. Not the second sentence, but the enhancements. And then he goes further on 69 and says, I think that the guideline range at a 27 or 29 level is more reasonable than the 33 level. So no calculus at all appears in the record at that first sentencing. I know that's what he says at the second sentencing, but that's not what he did at the first sentencing. As I put myself in the shoes of a district judge the first time around trying to subvert the intention of Congress and the mandatory minimum, I'm not likely to say it. I'm just going to do it. Well, and that brings up the second point, right? Can you do that when the statute says you can't even reduce the sentences because of the underlying predicate offense? And the government has submitted a supplemental case, this Wahy case, that says, well, we don't know which predicate offense. And that's true, because it's not clear from the first sentencing that that's what he was doing. It's not clear that he was trying to subvert the mandatory minimum. It was, I'm going through the guideline calculations. I'm going to impose the higher amounts based on the amount of money involved here, but I think the guidelines and the enhancements are the things that have made this too high, the sentence too high. Roberts. You wanted to reserve two minutes, and I see you're down to just about that. Thank you. May it please the Court. Kelly Zusman appearing on behalf of the United States. Your Honor, in response to the questions about whether or not this was a vindictive sentence, I've got two responses, really. The first is that it wasn't vindictive. He received the same sentence on the resentencing that he did in the initial sentencing. And this Court in Bay and Hagler held that you look at the aggregate. You don't look at them piece by piece. Well, why shouldn't we distinguish Bay and Hagler on the grounds that neither concern mandatory consecutive sentences? And I think your esteemed counsel for the appellant is arguing that sort of. And he does so on the basis that the 24 months was mandatory and that the statute didn't permit the district court to reduce the other counts. But as this Court recognized in Wahi, that statutory prescription doesn't apply unless you have a specifically enumerated offense that the aggregated identity theft is connected to. You don't have that here. And so this brings this well into alignment with this Court's decision in Handa. That was the one where we have drugs and we've got a 924C that is later vacated. Well, let's say we agree with you. And I'm saying that hypothetically at this point. Is there any case that directly addresses whether the presumption of vindictiveness applies when a charge that carries a mandatory consecutive sentence is overturned on appeal and the district court chooses to reimpose the same overall sentence on remand? The closest that I have is Handa. And that was the drug case involving the 924C where the sentence for the drug conviction was increased. And the Court said that's perfectly acceptable. The overall aggregate sentence is not higher. And because that 924C is vacated. But in direct answer to your question, I don't have anything squarely on point. Well, and so I'm asking that question just to explore all possibilities in terms of if hypothetically if this were something, if we were to agree with your position, which I'm saying that hypothetically, is it worthy of publication? I do think this is a somewhat unique case involving the aggravated identity. It would be an extension of Waheed and Handa. I also want to address the point Judge Silberman raised, which is even if there were a presumption of vindictiveness, I think the district court here rebutted that. At its ER-75, the judge explains the basis for his sentence. And he does so by saying even without those two counts of conviction that were reversed by the Ninth Circuit, there's nothing about that that changes the nature of the offense or the harm that was inflicted on the victims. That all remains exactly the same. The banks are still out the same amount of money. There was still the same harm caused to the community. And so therefore, a 132-month sentence is still appropriate even without those two counts. Let me go back to the point of the original sentencing where he's got, he thinks, a crime and therefore a mandatory minimum. Now, I understand that that was set aside later, but he's got a crime with a mandatory minimum consecutive sentence. Was it incorrect of him, contrary to law, for him to reduce the other nonmandatories because he thought the mandatory really resulted in an overall sentence that was too long? Was that improper? No. I believe under Waheed, it was entirely appropriate for him to do so. And in fact, the government never suggested that he could. That is to say, it is appropriate to, I think, subvert the intent of Congress, because what he's doing is saying, I think that mandatory minimum kicks that up too much and I'm going to reduce the other sentences I would otherwise give because I think the mandatory minimum results in a sentence that's too long. I mean, that's what he's doing. That's what he said he did. The second time around, when he looks back at it, that's what he said he did. Was that proper for him to do that? Well, if the question is, is it proper for him to subvert the will of Congress, my answer is no. However, if the question is, was it proper for him to make a downward adjustment to those other counts, because he knew he had to impose the 24-month consecutive in this case, where the other counts did not involve specifically enumerated offenses in the aggravated identity theft statute, then that was proper. Okay. And I believe Waheed says that was proper. Okay. So the first sentence, if nothing else had happened, the first sentence was not there wasn't anything defective about it. Correct. And no one ever suggested to the district court that he couldn't do that at the original sentencing. So I just – and that argument was simply never raised. Well, even if it was an illegal sentence the first time around, that's not the question in front of us now. Correct. Correct. And to get back to the – we don't believe there was any presumption of vindictiveness that was raised. He received 132, 132 on the second. But even if there was, again, I don't believe there's any evidence. If you look through the entire transcript of the resentencing hearing, I think Judge Siebel very thoughtfully addressed all of Mr. Horrib's concerns about the transcript. He recognized that Mr. Horrib had the right to challenge those, but he told him, look, we're done with that, we're here to resentence you. And Mr. Horrib received a fair sentencing hearing, and he received ultimately a fair sentence for the conduct that he committed. So what's your best response to Mr. Horrib's claim that the district court was precluded from, by specific language in the aggravated identity theft statute from reducing the sentence on the other charges to compensate for the mandatory two sentence? My response is that in Wahi, this Court said that you can make that consideration, you can make that reduction, because all of counts 2 through 6 were not predicate offenses that were listed in the aggravated identity theft statute. So what factors do we look to to determine whether Mr. Horrib's scheme was sophisticated? Well, what the district court looked to was the fact that he issued false brand certificates that Wells Fargo relied upon as securing the loan, that he transferred accounts from Montana to North Dakota, that he encouraged feedlot owners to lie about his ownership of cows that were in their lots. All of those factors were ones that the district court relied upon to say this involves sophisticated means. At the sentencing hearing, he also had the testimony from Wells Fargo saying this was complex, this took us a while to figure this out. It took us many months, and they did. They drove from Montana to North Dakota to Minnesota chasing down cows that Mr. Horrib didn't own. Chasing cows that didn't exist, for the most part. Well, they existed. They just weren't his. Unless the Court has any further questions, the government would submit. Thank you, Ms. Essman. Mr. Wright, back to you. You've got about two minutes. I'd like to go straight to the point on 924C and Waheed and Handa. The difference with 924C is that Congress has included enhancements for guns within the sentencing package. So if you don't get the separate conviction for the 924C conviction, then an enhancement applies to the original sentence. So it's either one or the other. They're built in. The aggravated identity theft doesn't have that same component. It's designed by Congress to be separate from those underlying convictions. Now, the government said, well, there were no underlying predicate offenses that would restrict the Court from reducing its overall sentence. Well, that's why that charge got thrown out. So it's hard to make a logical argument about that. It's because there was no predicate offense to even sustain the charge in the first place, and the Court went ahead and imposed sentence on that charge anyway. The government may win this case. It may come to regret at a future time how broadly it is arguing for the discretion of the district judge to reduce the nonmandatory sentences in a case where we've got a mandatory and a nonmandatory. I would agree with Your Honor. You cannot help your client. Right. You know, your client continues to file things with the Court. I know that, Your Honor. And he is represented by you. What do you want us to do with those? Should we not accept them? I mean, because a lot of times that we send them, you know, we don't file them because, you know, a person is represented. I don't have a solution for that, Your Honor. I think, you know, what you've worked up, that filings are not accepted and they're in a separate file is the only thing that I can come up with, too. Okay. So I'd like to close by saying we're not just talking about the numbers here on the sentence. I think if you look at the second sentencing, there is a presumption of vindictiveness. Judge Siebel was clearly frustrated with this defendant coming back on what he thought were technicalities that reduced those, that caused the reversal. You didn't have that in Hagler. You didn't have that in Bay. And that's what the right is designed to protect. Thank you very much, Mr. Wright. Mr. Zussman, thank you, too, in case you just argued a submitted. Good morning.
judges: Silverman, Fletcher, Callahan